IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| **RICKY RAY STEWART,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 1:11-0587 |
| ) | |
| **STATE OF WEST VIRGINIA,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

On August 29, 2011, Plaintiff, acting *pro se* and incarcerated at Stevens Correctional Center in Welch, West Virginia, filed his letter-form Complaint in this matter claiming entitlement to relief pursuant to 42 U.S.C. § 1983.[1] (Document No. 1.) Plaintiff names as Defendants the State of West Virginia and Stevens Correctional Center.[2] (Id., p. 2.) Plaintiff first complains that his constitutional rights have been violated because he has been exposed to secondhand smoke since his arrival at Stevens Correctional Center on July 6, 2011. (Id., p. 1.) Plaintiff states that "tobacco is being used every day in the pod I am in and in almost every dorm in this facility, and I am being forced to breathe everyone else's secondhand smoke every day." (Id.) Plaintiff explains that "tobacco is being used not more than seven feet from where I sleep and I am forced to breathe four other people's

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2] Section 1983 claims must be directed at a "person." *See Preval v. Reno*, 203 F.3d 821 (4th Cir. 2000)(unpublished)(finding that the Piedmont Regional Jail is not a "person" under Section 1983); *Roach v. Burch*, 825 F.Supp. 116, 117 (N.D.W.Va. 1993)(stating that the West Virginia Regional Jail Authority is not a "person" under Section 1983). Accordingly, the undersigned finds that the State of West Virginia and Steven Correctional Center are not "persons" as required by Section 1983.

secondhand smoke." (Id.) Plaintiff claims "this is putting my own personal health and well being at risk." (Id., p. 2.) Plaintiff states that "I have been sick since I got here partly from breathing secondhand smoke." (Id.) Plaintiff alleges that "most of the correctional officers are aware this is being done, but most just choose to ignore or over look this problem." (Id., p. 1.)

Next, Plaintiff complains that Defendants violated his constitutional rights by providing inadequate medical treatment for the hiatal hernia in his lower esophagus. (Id., p. 4.) Plaintiff states that "I cannot eat my meals because this hernia is stopping the food from going down." (Id.) Plaintiff alleges that he informed Dr. Lavender of his problem, but "she only doubled up my dosage of Prilosec, which some doctors have stated is the original cause of my hernia." (Id.) Plaintiff claims that his condition is getting worse because "I am having more trouble getting my food down and my complications have now worsened because I now have severe abdominal pain along with not being able to eat." (Id.) As relief, Plaintiff requests monetary damages. (Id., p. 2.) Plaintiff also requests that he be provided the "proper forms to file this suit." (Id.)

On August 29, 2011, the Clerk mailed Plaintiff the appropriate Complaint Form and Application to Proceed Without Prepayment of Fees. On September 7, 2011, Plaintiff filed his Complaint on the appropriate form and Application to Proceed Without Prepayment of Fees. (Document Nos. 3 and 4.) In his Complaint, Plaintiff names the following as Defendants: (1) Stevens Correctional Center; (2) Dennis Dingus, Warden; (3) Bea Shelton, Unit Manager; (4) Dr. Kimberly Jones-Fouche, Medical Unit Doctor; (5) Nurse DeShaun, Medical Unit Staff Nurse; and (6) James Rubenstein, Commissioner of Department of Corrections. (Document No. 4.) Plaintiff complains that Defendants acted with negligence and deliberate indifference by exposing him to secondhand tobacco smoke and providing him inadequate medical treatment. (Id.) Concerning his claim of exposure to secondhand smoke, Plaintiff alleges as follows:

> I am a nonsmoker and tobacco and snuff is being used on a daily basis no more than five feet from where I live and sleep. Someone has to be responsible for these things getting in here, either the inmates, staff, or visitors. The staff has been informed of this, but nothing is being done. I have developed health issues because of breathing secondhand smoke. I've been sick since I've been here because of the smoke. Also my hernia has gotten worse from the smoke I have to breathe. I now have trouble eating because my food won't go down. I spoke to Dr. Jones about this problem and all she done was doubled me up on my Prilosec dosage from once to twice a day. That has caused me problems with eating my food, and abdominal pain and hip and back pain. . . .

(Document No. 3-1, pp. 4 - 5.) Plaintiff, therefore, claims that "I have to breathe tobacco smoke every day in here and my health is not as good as it was on the street." (Id., p. 6.)

Concerning his claim of inadequate medical treatment, Plaintiff states as follows:

> I also feel the medical staff mentioned in the previous complaint is also guilty of malpractice for giving me another inmate's medication from July 1, 2011, to August 31, 2011. Also, medical staff were negligent for prescribing me Prilosec for a hiatal hernia and doubling my medication. I understand that medications containing PPIs, like Prilosec, Prevacid (acid blockers) are only 14 days. She doubled my dosage from once to twice a day. This warning came from the FDA. I have an article on this also. I feel that she has doubled my medication which also has contributed to my problems, also giving me another inmate's prescribed medication at least three different times by Nurse DeShaun. Due to this negligence and malpractice, I have developed several other problems such as: diarrhea, abdominal pain, headaches, dizziness, fainting, unable to eat meals, and severe hip and back pain. I am not the same as I was on the street. My health has gotten much worse due to this gross negligence.

(Id., pp. 4 - 5.) As relief, Plaintiff requests monetary damages. (Document No. 3, p. 5 and Document No. 3-1, pp. 6 - 7.)

**STANDARD**

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728,

3

118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

## DISCUSSION

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision

---

[3] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

4

for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), *aff'd*, 54 Fed.Appx. 159 (4th Cir. 2003), *cert. denied*, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to

5

filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

The West Virginia Division of Corrections' Policy Directive 335.00 establishes procedures whereby state inmates may seek review of complaints which relate to any aspect of their

6


imprisonment. Within 15 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must submit a G-1 Grievance Form to the Unit Manager. The Unit Manager must respond to the inmate's Grievance within five business days. If the Unit Manager's response was unfavorable, the inmate may appeal within five working days to the Warden/Administrator by filing a G-2 Grievance Form. The Warden/Administrator must respond to the appeal, in writing, within five working days. If the Warden/Administrator, in his/her discretion, determines that an investigation is warranted, a final response shall be made to the inmate within 30 working days. If the Warden/Administrator's response was unfavorable, the inmate may appeal within five working days to the Commissioner/designee of the Division of Corrections. The Commissioner must respond to the appeal within ten working days. The administrative process is exhausted when the Commissioner responds to the inmate's final appeal. The entire process takes about 60 days to complete.

In his Complaint, Plaintiff acknowledges that he did not fully exhaust his administrative remedies. (Document No. 3, p. 3 and Document No. 3-1, p. 3.) Plaintiff states that he has only attempted a "verbal [grievance] so far, but [a grievance] is being done." (Id.) Plaintiff explains that he has "spoke with a counselor, the chaplain, and the unit manager." (Id.) Thus, Plaintiff filed his Complaint without first exhausting his administrative remedies pursuant to the PLRA. The undersigned, therefore, recommends that Plaintiff's Complaint be dismissed in view of his failure to exhaust the administrative remedies provided under the West Virginia Division of Corrections' Policy Directive 335.00 prior to filing his Complaint.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that

the District Court **DENY** Plaintiff's Application to Proceeding Without Prepayment of Fees (Document No. 4.), **DISMISS** Plaintiff's Complaint (Document Nos. 1, 3 and 3-1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: September 15, 2011.

R. Clarke VanDervort
United States Magistrate Judge